## CANDEE *a.* GUNDELSHEIMER.

*Monroe County Court; May,* 1859.

SUPPLEMENTARY PROCEEDINGS.—TRANSCRIPT OF JUSTICE'S JUDGMENT FOR LESS THAN TWENTY-FIVE DOLLARS.

Supplementary proceedings may be taken against a resident of this State, although the judgment is for less than twenty-five dollars.

A transcript of a justice's judgment, though for a less amount than twenty-five dollars, may be docketed with the county clerk, and thereupon becomes a judgment of the county court, enforceable like other judgments, except that it is not a lien on real property.

Order to show cause why an attachment should not issue for contempt.

The facts are stated in the opinion.

*W. J. MacPherson,* for the motion.

*Z. L. Davis,* opposed.

CHUMASERO, COUNTY JUDGE.—The plaintiff in this case obtained a judgment against the defendant before a justice of the peace for $11.50 damages, and $1.77 costs, and filed a transcript thereof in the office of the county clerk; upon this judgment an execution was issued to the sheriff of Monroe county, and by him returned *nulla bona.* The usual affidavit being presented to me, I granted an order that the defendant appear before a referee on a certain day, to answer concerning his property; the order was not obeyed, and upon proof of this fact, I granted another order requiring the defendant to appear before me and show cause why an attachment should not issue against him for contempt. He now appears to show cause, and his counsel insists that the original order was improvidently granted, and that the judgment not being for *twenty-five dollars,* exclusive of costs, these proceedings are not authorized by section 292 of the Code of Procedure, and cannot be sustained.

As this is a question of deep interest, not only to the profession, but to the community in general, I have given the matter my most careful deliberation, and proceed to state in detail the conclusions to which I have arrived. I would here remark, that those conclusions have been equally a matter of surprise to myself, as they may be perhaps to others who have not examined this subject with attention and care.

At the time of granting the primary order, and up to the able argument of this case by counsel on both sides, I was firmly of the opinion that this case could not be sustained, and so expressed myself to the counsel on both sides, and I have no doubt but that I then declared the opinion of two-thirds of the profession here and elsewhere ; a close examination of the matter has, however, convinced me that that opinion was and is erroneous, and I think any discriminating mind must arrive at the same conclusions to which I have been led to in this case, on comparing and reviewing the course of legislation on this subject.

In our investigation we start with the first and original enactment authorizing these proceedings " supplementary to execution," and which is, section 247 of the Code of 1848, as follows: " Whenever an execution against property of the judgment debtor, issued to the sheriff of the county where he resides, or, if he reside out of the State, to the sheriff of the county where the judgment-roll is filed, shall be returned unsatisfied, in whole or in part, the judgment creditor may obtain an order from a judge of the court, or a county judge, requiring the judgment debtor to appear and make discovery on oath concerning his property," &c.

This section, it will be observed, makes no mention of *justices'* *judgments*, or *transcripts* thereof, and, unless aided by some other statutes, clearly excludes the idea that these proceedings could then be instituted upon any judgments other than those of *courts of record*, for the simple and obvious reason that upon none other, without some auxiliary, could an execution be issued to the sheriff of the county.

But such an auxiliary then existed. By section 128 of 2 Revised Statutes (3d ed., p. 344), it was provided that : " It shall be the duty of a justice of the peace, on the demand of any person in whose favor he shall have rendered a judgment for *above twenty-five dollars* exclusive of costs, to give a transcript

of such judgment." Section 129 then makes it the duty of the clerk of the county to file such transcript, and enter and docket a judgment thereon, which shall be a lien on the real estate of the defendant in the county, and makes the judgment so docketed of the *same force* and *effect* as a *judgment* in the *Court of Common Pleas.* Here is the solution of the error. Up to this period in the legislative history of this subject, the judgment must have been for *more* than twenty-five dollars, unless rendered in a court of record, for upon *no other* judgment could an execution issue to the sheriff, and consequently could not have been brought within the section of the Code of 1848, above referred to.

Then comes the Code of 1849, section 292, which is the same almost literally, as the section above quoted, contained in the Code of 1848, down to the words, " Or if he do not reside in this State, to the sheriff of the county where the judgment-roll, *or a transcript of a justice's judgment is filed ;*" the only difference being the addition of the last clause, " *or a transcript of a justice's judgment is filed.*"

The only alteration, thus far, seems to be the enactment relating to a transcript of a justice's judgment, being express, whereas, before, it rested in implication.

But we are now met with further and more extensive legislation on this subject. The Legislature, at its session in 1849 (*Session Laws,* ch. 438 ; 3 *Rev. Stats.,* 496, § 63, 5th ed.), amended the Revised Statutes, and enacted the following section in lieu of section 128 of the old statute above cited. " A justice of the peace, *on the demand of any party in whose favor he may have rendered a judgment,* shall give a transcript thereof, which may be filed and docketed in the office of the clerk of the county where the judgment was rendered ; the time of the receipt of the transcript by the clerk shall be noted thereon, and entered in the docket, and *from that time the judgment shall be a judgment of the county court.*" Then, after stating that a transcript of that judgment may be filed in any other county, &c., the section concludes thus : " But no such judgment for a less sum than twenty-five dollars shall be a lien upon or enforced against real estate."

Now, it will be observed that this, by the present statute, a transcript of a justice's judgment, for *any amount, however small,*

may be filed in the county clerk's office, and that immediately upon such filing it becomes, not merely of the same *effect* and *force*, as a judgment of the county court, but *actually* a *judgment* of the county court. It will not be denied for a moment that a judgment in a county court, rendered in an action originally commenced in that court, irrespective of amount, could be made the basis of these proceedings, and the statute makes the judgment in this case *positively* a judgment of this court, from the time of filing the transcript.

The only remaining provision which it will be necessary to examine in connection with the above, is section 292 of the present Code, which must be read in connection with section 63 of the statutes, just above cited, and is as follows : " *When an execution* against property of the judgment debtor, or of any one of the several debtors in the same judgment *issued to the sheriff* of the county where he reside, *or if he do not reside in the State*, to the sheriff of the county where a judgment-roll, or a transcript of a justice's judgment for twenty-five dollars or upwards is filed, is returned unsatisfied in whole or in part, the judgment creditor is entitled to an order," &c.

Now the plaintiff obtains his judgment in the justice's court, and files his transcript ; it *immediately* becomes a judgment of the *county court ;* he issues his execution to the sheriff of the county where the defendant resides, has it returned unsatisfied, and applies for the order granted by section 292 of the Code, the amount of the judgment being material only in cases of non-residents in whose favor the Legislature seem to have made an exception.

The conclusion to be derived from these different sections is inevitable.

It was urged upon the argument, that the effect of this decision would be to repeal that portion of the statute relating to the lien of real estate. This is not necessarily so ; for these supplementary proceedings are not instituted until the affidavit is produced that the sheriff has returned the execution unsatisfied, which he could not do had the defendant any real estate in the county upon which this lien could be enforced.

I am not sorry that the law bears this construction. A large majority of those debts which the courts and the law seem powerless to enforce are less in amount than twenty-five dollars,

and these, too, chiefly owing to operatives, servants, laborers, and persons of limited means, who are oftentimes illy able to bear the loss, and depend upon the scanty pittance they earn from day to day for the support of their families and themselves. It is argued that it is beneath the dignity of the courts to set all this cumbrous machinery in motion 'for so small and trivial an amount. I answer, it is *never* beneath the dignity of the courts or the law to protect the rights and secure the privileges of the poorer classes—to ferret out dishonesty and punish fraud. Costs in these cases are in the discretion of the court: if the debtor is poor and honest, and cannot pay, he would never be charged with costs; if, on the contrary, he has property concealed which the law cannot reach without this searching process, is dishonest and will not pay, he will be entitled to but little sympathy. If condemned by the law, he is compelled to pay the full expenses of his trial and conviction, however small the judgment he may seek to evade.

I am, therefore, of opinion, that these proceedings are properly instituted, and that the defendant must submit himself to examination; but inasmuch as this question has been in doubt, and the defendants may have been honestly misled by a prevailing public error, I now make the following order: that the defendant again appear before the referee named in the original order, on two days' notice of the time and place, from the plaintiff's attorney; or that, in default thereof, an attachment issue against him for contempt.